UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHNATHAN YELENICK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COCHRAN, INC., a Washington corporation,<br><br>Defendant. | CASE NO. 2:25-cv-02524-JHC<br><br>ORDER |

**I**

**INTRODUCTION**

This matter comes before the Court on Plaintiff's Motion to Remand.  Dkt. # 15.  The Court has reviewed the materials filed in support of and in opposition to the motion, the record, and the governing law.  Being fully advised, the Court GRANTS the Motion.

**II**

**BACKGROUND**

Plaintiff Johnathan Yelenick, an electrician, originally filed this class action on behalf of himself and other current and former employees of Defendant Cochran, Inc., in King County Superior Court.  *See* Dkt. # 1-1.  The original complaint (the Complaint) asserted nine claims against Defendant: (1) Failure to Provide Rest Periods ((RCW 49.12.020); (2) Failure to Provide

ORDER - 1

Meal Periods (RCW 49.12.020); (3) Failure to Pay Overtime Wages (RCW 49.46.130); (4) Payment of Wages Less Than Entitled (RCW 49.46.090); (5) Failure to Accrue and Allow Use of Sick Leave (RCW 49.46.210); (6) Unlawful Deductions and Rebates (RCW 49.52.060); (7) Failure to Pay All Wages Due at Termination (RCW 49.48.010); (8) Willful Refusal to Pay Wages (RCW 49.52.050); and (9) Failure to Pay All Compensation Owed (Seattle Municipal Code (SMC) 14.20.020). *See generally id.*

On December 10, 2025, Defendant removed the case to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1331. Dkt. # 1. The Removal Notice says that the action was removed "on the grounds that the Labor Management Relations Act [LMRA], § 301, preempts and supplants each of [Plaintiff's] claims and those of the putative class" and that, "to the extent any claim is not found to be preempted and supplanted, this Court may exercise supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a)." *Id*. at 1. Soon after, Defendant moved to dismiss the Complaint, arguing that (1) Plaintiff's claims under RCW 49.12.020 and RCW 49.48.010 fail as a matter of law; (2) Plaintiff's claims are preempted by Section 301 of the LMRA; and (3) in the alternative, the Complaint fails to state a claim under Federal Rule of Procedure 12(b)(6). *See generally* Dkt. # 10.

While the Motion to Dismiss (Dkt. # 10) was pending, Plaintiff filed the First Amended Complaint (FAC). Dkt. # 13. The FAC asserts five claims against Defendant: (1) Failure to Pay Overtime Wages (RCW 49.46.130); (2) Payment of Wages Less Than Entitled (RCW 49.46.090); (3) Unlawful Deductions and Rebates (RCW 49.52.060); (4) Willful Refusal to Pay Wages (RCW 49.52.050); and (5) Failure to Pay All Compensation Owed (SMC 14.20.020). *Id.* at 10–14. The FAC does not assert any claims under the parties' collective bargaining agreement

ORDER - 2

(the CBA), nor even mention a CBA.[1] *See generally id.* Each claim except the third are based on alleged uncompensated, "off-the-clock" time before and after a shift when Plaintiff had to don and doff safety gear and set up equipment. *See id.* at 6, ¶ 5.2. As to the third claim, Plaintiff alleges that Defendant's failure to reimburse him for using his personal cell phone for work purposes and for purchasing his own equipment violates a state requirement that the "employer must identify and record all wage deductions openly and clearly in employee payroll records." *See id.* ¶¶ 5.10, 6.8, 9.2; WAC 296-126-028(5).

Plaintiff now moves to remand the case to King County Superior Court pursuant to 28 U.S.C. § 1447. Dkt. # 15.

### III

#### DISCUSSION

A.     Legal Standards

1.     Removal jurisdiction

"Federal courts are courts of limited jurisdiction." *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991). "Accordingly, a federal district court may only hear cases for which there is subject matter jurisdiction." *Palm Desert Nat'l Bank v. Fid. Nat'l Title Ins. Co.*, 2013 WL 12132063, at *3 (C.D. Cal. Dec. 26, 2013) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006). When a case is removed to federal court based on federal-question jurisdiction, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 (9th Cir. 2000); *see also Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*,

---

[1] Plaintiff's other filings both explicitly and implicitly acknowledge the existence of a CBA between the parties. *See, e.g.*, Dkt. # 8 at 3 (mentioning CBA in response to Defendant's Notice of Related case at Dkt. # 5); Dkt. # 15 at 9 (in remand motion, stating that "Plaintiff's claims are not substantially dependent on any interpretation of the CBAs in question").

ORDER - 3

463 U.S. 1, 11 n.9 (1983) ("The well-pleaded complaint rule applies to the original jurisdiction of the district courts as well as to their removal jurisdiction.").

In the Ninth Circuit, there is a "'strong presumption' against removal jurisdiction[.]" *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). Thus, "'the defendant always has the burden of establishing that removal is proper,'" and a district court must resolve "all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *id.*); *see also Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005) ("[R]emoval statutes should be construed narrowly in favor of remand[.]"). "If the district court determines, after removal, it lacks subject matter jurisdiction, it must remand the case back to state court." *Floyd v. Photon Infotech Inc.*, 2025 WL 3442736, at *2 (W.D. Wash. Dec. 1, 2025) (citing 28 U.S.C. § 1447(c)). This is true even if the plaintiff files an amended complaint after the case is removed to federal court: If the plaintiff's amended complaint "eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025).

A court can properly assert supplemental jurisdiction "over state law causes of action where the relationship between the federal and state claims is such that they 'form part of the same case or controversy under Article III of the United States Constitution.'" *Goulatte v. CitiMortgage, Inc.*, 2012 WL 12888846, at *2 (C.D. Cal. July 2, 2012) (quoting 28 U.S.C. § 1367(a)). A district court may also invoke supplemental jurisdiction to remove state-law claims to federal court, but "only when there is 'a hook of original jurisdiction on which to hang it.'" *Pioneers Mem'l Healthcare Dist. v. Imperial Valley Healthcare Dist.*, 745 F. Supp. 3d 1088, 1105 (S.D. Cal. 2024) (quoting *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805

ORDER - 4

(9th Cir. 2001)); *see also Andy Invs. LLC v. Potter*, 2025 WL 1155862, at *3 (W.D. Wash. Apr. 21, 2025) ("Without removal jurisdiction, the Court cannot have supplemental jurisdiction.").

2.      Complete preemption doctrine

Although the general rule is that "a case may not be removed to federal court on the basis of a federal defense," the complete preemption doctrine provides an exception. *Balcorta*, 208 F.3d at 1106 (quoting *Franchise Tax Bd.*, 463 U.S. at 14). Complete preemption applies when the "pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). In such a situation, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim," thereby giving a court federal-question jurisdiction over that claim. *Id*.

Courts regularly apply the complete preemption doctrine to state-law claims that implicate Section 301 of the LMRA. *See Balcorta*, 208 F.3d at 1107–08 (collecting cases). But not every case involving a labor-management agreement is automatically subject to the complete preemption doctrine. *Id*. The Ninth Circuit has articulated a two-step test for determining when a claim is or is not preempted by § 301. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007). The *Burnside* test requires a court to first determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Id*. at 1059; *see also Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) ("The essential inquiry is this: Does the claim seek 'purely to vindicate a right or duty created by the CBA itself[?]'" (quoting *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018)). In making this determination, courts are instructed "to consider the legal character of a claim, as independent of rights under the collective-bargaining agreement and not whether a

ORDER - 5

grievance arising from precisely the same set of facts could be pursued." *Burnside*, 491 F.3d at 1060 (citation modified). Courts are also instructed to reject claims when "reliance on the CBA" appears only "as an aspect of a defense[.]" *Id*. "If the right exists solely as a result of the CBA, then the claim is preempted, and [the court's] analysis ends there." *Id*. at 1059. But if the right "exists independently of the CBA," the court will proceed to step two. *Id*.

At step two, a court must determine whether the claim is "'substantially dependent' on the terms of a CBA." *Id*. at 1060 (quoting *Caterpillar*, 482 U.S. at 394). To do so, courts are instructed to consider "whether the claim can be resolved by looking to versus interpreting the CBA." *Id*. (cleaned up and citations omitted). "At this second step of the analysis, claims are only preempted to the extent there is an active dispute over the meaning of contract terms." *Curtis*, 913 F.3d at 1153 (internal quotation marks and citations omitted); *see also Schurke*, 898 F.3d at 921 ("'Interpretation' is construed narrowly; it means something more than 'consider,' 'refer to,' or 'apply." (quoting *Balcorta*, 208 F.3d at 1108)). Thus, "a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Curtis*, 913 F.3d at 1153; *see also Burnside*, 491 F.3d at 1060 ("[A]lleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim." (quoting *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 691 (9th Cir. 2001)). Likewise, state-law claims that merely require the court to check whether the CBA contains a waiver, identify an employee's pay rate, or reference CBA provisions regarding compensation for compulsory travel time, banked vacation days, or other special circumstances, do not create complete preemption at *Burnside* step two. *See McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1013 (9th Cir. 2018); *Schurke*, 898 F.3d at 927.

Without complete preemption under the LMRA (or some other exception not at issue here), a pure state-law claim brought by an employee against their employer cannot alone give

ORDER - 6

rise to federal-question jurisdiction. Accordingly, if a case is removed to federal court based on such a claim, the district court lacks jurisdiction over the action and must remand the case to state court. *See, e.g., Burnside*, 491 F.3d at 1074 (directing the district court to remand the case to state court because the plaintiff's state-law claims were not preempted by Section 301); *McCray*, 902 F.3d at 1014 (same).

B.      Analysis

Plaintiff contends that the Court should remand this case for lack of federal question jurisdiction. *See generally* Dkt. # 15. He argues that (1) a federal question does not appear on the face of the FAC; (2) the complete preemption doctrine does not apply, as all of Plaintiff's claims are premised solely on state law and do not require any interpretation of the CBA; and (3) absent federal-question jurisdiction, the Court cannot assert supplemental jurisdiction over Plaintiff's state-law claims. *See id.* at 4–11.

Defendant responds that despite Plaintiff's amendments to the complaint, which it asserts were made only "to evade this court's proper exercise of jurisdiction," *id.* at 5, the Court retains jurisdiction over the action because Plaintiff's amended state-law claims remain preempted under Section 301 of the LMRA. *Id.* at 11–17.

Based on the parties' arguments, then, the only question for the Court to resolve is whether any of Plaintiff's state-law claims, as alleged in the FAC, are subject to complete preemption under *Burnside*. For the reasons below, the Court concludes that none of Plaintiff's claims are completely preempted.

1.      Do Plaintiff's claims exist independently of the CBA?

The FAC asserts five claims against Defendant: (1) Failure to Pay Overtime Wages (RCW 49.46.130); (2) Payment of Wages Less Than Entitled (RCW 49.46.090); (3) Unlawful Deductions and Rebates (RCW 49.52.060); (4) Willful Refusal to Pay Wages (RCW 49.52.050);

ORDER - 7

and (5) Failure to Pay All Compensation Owed (SMC 14.20.020).  Dkt. # 13 at 10–14.  Each of these claims (except the unlawful deduction claim) is based on Plaintiff's uncompensated time spent off-the-clock donning and doffing safety gear and equipment.  *See* Dkt. # 13 ¶ 5.2.  As the citations in these claims indicate, they (including the unlawful deduction claim) are each based on a specific state law[2] that affords employees with certain rights against their employer, irrespective of the CBA.  The "legal character" of Plaintiff's claims thus suggests that Plaintiff invokes Washington state law "independently" of his rights under a CBA.  *See Burnside*, 491 F.3d at 1060.

The FAC's actual allegations bolster this conclusion.  Nothing in the FAC suggests that Plaintiff seeks to "vindicate a right or duty created by the CBA[.]"  *Curtis*, 913 F.3d at 1152 (quoting *Schurke*, 898 F.3d at 921).  Defendant does not appear to challenge this conclusion, arguing only that, since the CBA provides for more generous overtime compensation than the Washington state minimum, Plaintiff's claim arises from the CBA and not state law.  *See* Dkt. # 18 at 12–14.  Defendant says that this means these claims are "preempted at step one of the *Burnside* analysis," but does not address that other statutes provide a basis for Plaintiff's claims.  And Plaintiff explicitly states that he seeks compensation for missed overtime at the statutory rate, not the CBA rate.  *See* Dkt. # 19 at 4.  The same is true for Plaintiff's unlawful deductions claim.  Defendant also suggests that there is something nefarious about Plaintiff's excision of potentially preempted claims from the Complaint, Dkt. # 18 at 10–11, but makes no argument for why this should mean the remaining claims are preempted or why it is otherwise impermissible

---

[2] RCW 49.46.130 sets forth the minimum rate of compensation for employment in excess of a forty-hour workweek; RCW 49.46.090 explains an employer's liability for paying employees less than they are entitled to; RCW 49.52.060 concerns authorized withholdings; RCW 49.52.050 provides penalties for employers who willfully deprive employees of wages; and SMC 14.20.020 provides compensation requirements for employees.

ORDER - 8

under the pleading rules.  In short, because Plaintiff is not seeking compensation at the higher CBA rate and is instead seeking compensation at the lower statutory rate, the fair inference is that Plaintiff is seeking to vindicate "right[s] conferred upon [him] by virtue of state law, not by [the] CBA." *Burnside*, 491 F.3d at 1059.

Accordingly, the Court concludes that Plaintiff's five claims for relief "exist[ ] independently of the CBA."  *Id*.  It thus finds that Plaintiff's claims are not preempted at step one, and so it must proceed to *Burnside* step two.  *Accord Anderson v. Sequoyah Elec. LLC*, 2026 WL 322753, at *4 (W.D. Wash. Feb. 6, 2026) (concluding that the plaintiff's claims were not preempted at first step of *Burnside* analysis).

2.       Do Plaintiff's claims substantially depend on the terms of the CBA?

All five of Plaintiff's claims essentially raise the same question: Did Defendant deprive Plaintiff (and other putative class members) of wages, pay, or other benefits to which they were statutorily entitled under Washington law?  To answer this question, a court would have to determine (1) what wages, pay, and other benefits were Plaintiff and other class members entitled to under each statute; (2) what wages, pay, or other benefits did Plaintiff and other class members receive from Defendant during the class period; and (3) is there a difference between the two.  In this case, these questions require evaluating whether Plaintiff should have been paid for time spent donning and doffing personal equipment and setting up safety gear, and whether Defendant failed to reimburse Plaintiff for work expenses.  None of these issues appear to raise any "questions about the scope, meaning, or application of the CBA[,]" nor require a court to "interpret" any of the CBA's terms.  *See Curtis*, 913 F.3d at 1153; *see also Schurke*, 898 F.3d at 921.

Defendant tries to avoid this conclusion by arguing that determining "what is truly compensable [time] will require the Court to interpret the CBA."  Dkt. # 18 at 14.  Defendant

ORDER - 9

says that "[d]etermining whether pre-shift donning and doffing and equipment set-up are compensable [] requires a court to construe" pertinent CBA clauses setting out what equipment Plaintiff had to maintain, Dkt. # 18 at 15, but this is not the case.  "Interpretation" under *Burnside* means resolving an "active dispute over the meaning of contract terms," or else "something more" than mere consideration, reference to, or application of the CBA.  *See Curtis*, 913 F.3d at 1153; *Schurke*, 898 F.3d at 921.  But Defendant points to no disputed term in the CBA, and nor does Plaintiff appear to dispute any CBA term in the FAC.  *See generally* Dkt. # 13.  Put differently, just because a court may need to know what the CBA requires of Plaintiff's equipment does not mean it is "interpreting" that CBA, especially when Plaintiff raises no dispute about its meaning.  And Defendants' argument that determining what the actual rate Plaintiff would be owed requires interpreting the CBA, Dkt. # 18 at 16–17, is similarly unavailing.  Courts have regularly found that referencing a CBA to identify an employee's pay rate or calculate damages based on undisputed wage terms does not convert a state-law claim for missing compensation into a preempted claim under Section 301 of the LMRA.  *See McCray*, 902 F.3d at 1013; *see also Schurke*, 898 F.3d at 927.  In short, Plaintiff's claims for overtime and minimum wage can be resolved by "looking to," rather than "interpreting," the CBA.

The Court therefore does not find that any of the FAC's claims "substantially depend[ ] on the terms of [the] CBA."  *Burnside*, 491 F.3d at 1060.  *Accord Anderson*, 2026 WL 322753, at *4–5 (concluding that the plaintiff's claims were not preempted at second step of *Burnside* analysis).  The Court thus concludes that none of Plaintiff's claims are completely preempted under Section 301, thereby depriving this Court of federal-question jurisdiction.  As Defendant offers no other basis for this Court to assert federal-question or supplemental jurisdiction over any claim in the FAC, the Court concludes that it lacks jurisdiction and must remand this case to

ORDER - 10

the state court in which it was originally filed. *See Burnside*, 491 F.3d at 1074; *McCray*, 902 F.3d at 1014.

**IV**

**CONCLUSION**

For these reasons, the Court GRANTS Plaintiff's Motion to Remand (Dkt. # 15) and ORDERS this case remanded to King County Superior Court. The Court DIRECTS the Clerk to strike Defendant's Motion to Dismiss (Dkt. # 17) as moot.

Dated this 27th day of March, 2026.

John H. Chun
United States District Judge

ORDER - 11